# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID JONES, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-07879 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| DR. DAVIS BARBER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Jones, a pretrial detainee, arrived at Cook County Jail in 2017 with a broken hand. He injured himself at some point before his arrest, and the break was serious enough to require surgery. Unfortunately, Jones entered Cook County Jail before he could have the operation. And medical care, he alleges, was a long time coming. He spent months in custody, with no treatment for his broken hand.

After months of incarceration, Jones filed suit under section 1983 for the lack of medical care. He alleges that seven medical providers at the jail (the "Cermak Defendants") repeatedly failed to treat his hand. He also claims that Superintendent Walsh and Sheriff Dart (all parties call them the "Sheriff Defendants," so the Court will too) failed to establish or implement policies that addressed deficiencies in the jail's medical system. The Cermak Defendants answered the complaint, but the Sheriff Defendants moved to dismiss. *See* Dckt. Nos. 50, 52.

For the reasons stated below, the Court grants the Sheriff Defendants' motion to dismiss. The Court grants Plaintiff leave to file an amended complaint by April 30, 2020.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

In 2017, David Jones seriously injured his right hand. *See* Third Am. Cplt. ¶ 17. Doctors at the University of Chicago Hospital determined that the injury required surgery, and scheduled a procedure within a few weeks. *See id.* But before Plaintiff could undergo an operation, he was detained at Cook County Jail on July 28, 2017. *Id.* at ¶ 18.

According to the complaint, Jones suffered from inadequate medical care from the moment he arrived at the jail. Two Cermak Defendants completed separate medical intake evaluations and failed to note his broken hand, let alone treat it. *Id.* The very next day, Jones requested a doctor's visit to address "severe pain" in his hand. *Id.* at ¶ 19. But to no avail. He did not meet with medical staff for almost a month. *See id.* at ¶ 20.

On August 22, 2017, Jones first met with a physician's assistant who noted that his hand appeared deformed. *Id.* The caregiver gave him Tylenol and referred him for an x-ray. *Id.* The x-ray later confirmed what Jones had said all along: his hand was broken and required resetting. *Id.* at ¶¶ 20–21. Someone – the complaint does not say who made this assessment, or where, or when it took place – told Jones that his hand "would become deformed if not properly treated." *Id.* at ¶ 21.

One week later, on August 31, Jones filed a Health Service Request Form asking to see a doctor because the Tylenol was not working. *Id.* at ¶ 22. In the following two weeks, he met

with several medical employees at the jail. *Id.* at ¶¶ 23–27. One physician's assistant prescribed naproxen (a painkiller) and one referred him to orthopedic surgery twice. *Id.* at ¶¶ 25, 27. The medication remained ineffective. The complaint does not say what came of the referrals.

For months after the x-ray, Jones continued to request treatment for his broken hand. He wrote to the jail's medical director on September 14, but received no response. *Id.* at ¶ 28. He also asked a social worker to file an emergency grievance on his behalf. *Id.* at ¶ 29. The grievance was never filed. *Id.*

Jones next wrote letters to prison officials. He wrote to Defendant Walsh about his injury on September 29, but he received no response. *Id.* at ¶ 32. The next day, Jones sent a letter to Defendant Dart describing the denial of medical treatment. *Id.* at ¶ 33. But again, no response. *Id.*

Plaintiff kept trying, month after month. *Id.* at ¶¶ 34–47. He repeatedly submitted Health Service Request Forms, asking for doctors' visits and complaining of serious hand pain and ineffective pain medication. *Id.* at ¶¶ 36, 38, 39, 41, 43, 45, 46, 48. For example, on October 18, 2017, Jones submitted a form that read: "Can I please have surgery on my hand. It is not getting any better and the medication is no longer working. Please!!!" *Id.* at ¶ 36. Three months later, he submitted another form: "[I] need to see the hand doctor about my right hand because there is no improvement. And it really does hurt." *Id.* at ¶ 46. Some of these requests led to visits with medical staff and prescriptions for pain medication. *Id.* at ¶¶ 37, 40, 42, 44, 47.

As of May 2018 – nine months after the x-ray – the broken hand remained untreated. *See id.* at ¶ 48.

Jones filed suit in 2017, and amended his complaint several times. Count I of the Third Amended Complaint is a section 1983 claim against the Cermak Defendants. Count II is a section 1983 claim against the Sheriff Defendants. So only Count II is at issue here.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

At this early stage, the Court assumes the truth of the well-pleaded facts in the complaint, including the exhibits (*i.e.,* a 2008 DOJ Report about Cook County Jail that Jones attached to his complaint). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider evidence outside the pleadings on a motion to dismiss without converting it to a motion for summary judgment. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). But an exhibit to the complaint is deemed to be part of the complaint itself, so it is fair game on a motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court may also take judicial notice of matters of public record, such as the litigation resulting

from the 2008 DOJ Report. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

**Discussion**

Before addressing the viability of the complaint, the Court needs to address two housekeeping matters.

First, the parties discussed the wrong legal standard in their briefs. Jones brings a section 1983 claim against the Sheriff Defendants for inadequate medical care. Plaintiff is a pretrial detainee, so his claims arise under the Fourteenth Amendment, not the Eighth Amendment. The Eighth Amendment applies to "punishments," and thus covers claims by inmates after sentencing. *See* U.S. Const. amend. VIII; *Daniel v. Cook County*, 833 F.3d 728, 733 (7th Cir. 2016); *see also Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994).

The Seventh Circuit formerly applied the same "deliberate indifference" standard to claims brought by detainees and convicted inmates. *See Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). That approach changed when the Supreme Court held – in an excessive force case – that a "pretrial detainee must show only that the force purposely or knowingly used against him was *objectively unreasonable*." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (emphasis added). In other words, the Supreme Court "held [that] the due process standard for . . . pretrial detainees is *less demanding* than the Eighth Amendment standard for . . . convicted inmates." *McWilliams v. Cook County*, 2018 WL 3970145, at *5 (N.D. Ill. 2018) (emphasis added). The Seventh Circuit later extended the objective unreasonableness standard to inadequate medical care claims brought by pretrial detainees. *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

A plaintiff states an inadequate medical care claim under the Fourteenth Amendment by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly" and (2) the defendant's conduct was objectively unreasonable. *Id.* at 353. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively – without regard to any subjective belief held by the individual – whether the response was reasonable." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). So under *Miranda*, objective unreasonableness – not deliberate indifference – is the standard that governs the claims by Jones here.

Second, the parties seemingly agree that Plaintiff is suing the two Defendants in their official capacities only. The Third Amended Complaint does not specify whether Jones is suing the Sheriff Defendants under section 1983 in their personal capacities or their official capacities (or both). It makes a big difference. Different legal standards apply to each type of claim.

Individual capacity claims "seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)) (internal citations omitted). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Id.* (internal citations omitted); *see also Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). "The liability of the Sheriff's Department and of the County is derivative of [Dart and Walsh's] official-capacity liability, and the official-capacity liability is subject to [the] holding in *Monell v. Department of Soc. Servs.* . . . that 'a local government may not be sued

6

under § 1983 for an injury inflicted solely by its employees or agents.'" *Estate of Sims ex rel. Sims*, 506 F.3d at 514 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

To state a claim under section 1983 against a municipality, a plaintiff must allege that an official policy or custom caused the constitutional violation, and that the official policy or custom was the "moving force" behind the violation. *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Alleging an unconstitutional policy is a prerequisite to finding official-capacity liability. *Id.* A plaintiff can demonstrate an official policy in three ways: (1) an express policy adopted and promulgated by a municipality's officers; (2) a practice or custom that, although not expressly authorized, is widespread and well settled; or (3) an allegation that a person with final policymaking authority caused the constitutional violation. *Id.* at 515; *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

The Sheriff Defendants read the complaint to allege only official capacity claims. *See* Mot. to Dismiss, at 2 (Dckt. No. 50) ("Based on the allegations, it is presumed that the Sheriff Defendants are sued in their official capacities."); *id.* at 3–4 (same); *id.* at 4 ("Plaintiff does not appear to claim that Sheriff Dart or Superintendent Walsh were personally responsible for these alleged violations, but rather that the Cook County Sheriff as the custodian of the jail was the moving force behind these alleged unconstitutional practices or customs."). The Sheriff Defendants practically invited Jones to speak up if he disagreed.

Jones and his counsel read the complaint the same way. In response to the motion to dismiss, Jones never argues that he sued the Sheriff Defendants in their personal capacities. *See* Dckt. No. 57. So, like the parties themselves, the Court reads the complaint to allege only official capacity claims against the Sheriff Defendants.

7

**I.    The Official Capacity Claim**

Jones alleges that the Sheriff Defendants failed to establish or implement policies to address inadequacies with the jail's medical care. Specifically, he claims that they failed to address: (1) inadequate intake screening; (2) inadequate health assessments upon admission; (3) inadequate acute, chronic, and emergency medical care; (4) inadequate access to medical care; and (5) inadequate staffing, training, and supervision. *See* Third Am. Cplt. ¶¶ 60–61 (Dckt. No. 46).

The Sheriff Defendants make three arguments in their motion to dismiss. The first two arguments miss the mark, but the third argument is on target.

First, the Sheriff Defendants argue that Jones did not raise *Monell* liability in his complaint. But a pleading does not have to identify legal theories. *See Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014) ("[I]t is factual allegations, not legal theories, that must be pleaded in a complaint."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). By alleging that Defendants failed to establish or implement policies to address inadequate healthcare at Cook County Jail, Jones asserted an official capacity claim subject to *Monell*, even without the label.

Second, the Sheriff Defendants try to wash their hands of responsibility for medical care at Cook County Jail. They offer snippets from cases noting that Cermak is responsible for the medical needs of pretrial detainees. *See, e.g.*, *Everett v. Cook County*, 655 F.3d 723, 725 (2011) (analyzing First Amendment and Title VII discrimination claims brought by a former Cermak employee); *Boyce v. Moore*, 314 F.3d 884, 887 n.1 (7th Cir. 2002) (affirming summary judgment due to plaintiff's failure to provide admissible evidence supporting his § 1983 inadequate medical care claim); *Williams v. Patel*, 2013 WL 6019543, at *6 (N.D. Ill. 2013) (granting

8

summary judgment due to plaintiff's failure to provide evidence of an official policy and general lack of an injury).

Those cases do not immunize the Sheriff Defendants from liability. The cases simply noted that Cermak provides medical care at the Cook County Jail, often in the background section or a footnote to clarify who the parties are. *See Everett*, 655 F.3d at 724–25; *Boyce*, 314 F.3d at 887 n.1; *Williams*, 2013 WL 6019543, at *6. They do not stand for the proposition that inmates have no recourse against officials in the Sheriff's Department when they deprive an inmate of medical care.

In fact, the Seventh Circuit has found that it doesn't matter that Cermak – and not the Sheriff's Department – is the primary medical provider for Cook County Jail. *See Daniel v. Cook County*, 833 F.3d 728, 737 (7th Cir. 2016). Cook County Jail and Cermak maintain a "close relationship," bolstered by the fact that "Cermak facilities are physically located within the Jail." *Id.* "[T]he constitutional duty under the Eighth and Fourteenth Amendments to provide adequate health care rests on the custodian." *Id.* As the self-acknowledged custodians of Cook County Jail (*see* Defs.' Reply, at 2 (Dckt. No. 60)), the Sheriff Defendants cannot be relieved of their "duties to ensure that the medical needs of inmates are adequately met." *See Hampton v. Hart*, 2011 WL 2837407, at *7 (N.D. Ill. 2011); *see also Daniel*, 833 F.3d at 737. "The Sheriff's reliance on Cermak to provide medical care to detainees does not excuse him from liability under § 1983." *Parish v. Sheriff of Cook Cty.*, 2019 WL 2297464, at *8 (N.D. Ill. 2019). Simply put, the fact that someone else has *primary* responsibility for medical care does not mean that the Sheriff Defendants have *no* responsibility for medical care.

Third, the Sheriff Defendants argue that the complaint fails to allege the existence of an unconstitutional policy that led to his injury. It is certainly true that Jones does not allege an

9

express policy that "explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). He doesn't allege, for example, that there is an express policy against providing medical care. Instead, he complains about the lack of a policy. *See* Third Am. Cplt. ¶¶ 60–61 (Dckt. No. 46). That claim is potentially cognizable. "A second way of complaining about an express policy is to object to omissions in the policy." *Calhoun*, 408 F.3d at 380.

"An unconstitutional policy can include both implicit policies as well as a gap in expressed policies." *Daniel*, 833 F.3d at 734. When "a potentially dangerous practice" needs rules or regulations to be remedied, "the failure to make a policy is also actionable." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). The failure to establish or implement certain policies must be "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *See Daniel*, 833 F.3d at 734 (quoting *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016)); *see also* Third Am. Cplt. ¶¶ 60–61.

But this method of alleging a *Monell* claim brings its own challenges. When a plaintiff relies on a gap in policies to support his claims, "he must provide enough evidence . . . to permit an inference that the [entity] has *chosen* an impermissible way of operating." *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005) (emphasis added). A "random event" confined to one person doesn't cut it. *Id.* at 380. It is not enough to allege that there must be an unlawful policy because something bad happened to the plaintiff.

Essentially, Jones must plead that his lack of medical care was not a one-off. He must allege that his constitutional violations were not isolated incidents. *See Thomas*, 604 F.3d at 303 ("[T]he plaintiff must demonstrate that there is a policy at issue rather than a random event."). "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the

10

single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the [omission in the policy] and the constitutional deprivation." *City of Okla. v. Tuttle*, 471 U.S. 808, 824 (1985).

While "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability . . . it must be more than one instance, or even three." *Thomas*, 604 F.3d at 303 (cleaned up). One can infer the existence of a policy "[i]f the same problem has arisen *many times* and the municipality has acquiesced in the outcome." *Calhoun*, 408 F.3d at 380 (emphasis added). There must be a critical mass to support the inference that the injury was the product of "conscious choice." *Id.* (quoting *Tuttle*, 471 U.S. at 823).

In sum, Jones must allege "systemic and gross deficiencies" in the jail's medical care system. *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). He also must allege that a policy-making official, such as the Sheriff Defendants, knew about the deficiencies and failed to correct them. *Id.*

To clear that hurdle, Jones relies on a 2008 report based on a U.S. Department of Justice investigation into Cook County Jail. *See* Third Am. Cplt. ¶ 60; *see also* Dckt. No. 46-1, Exhibit K ("2008 DOJ Report"). The Third Amended Complaint refers to the Report's findings about the jail's medical care system writ large. *See* Third Am. Cplt. ¶ 60. Indeed, Jones alleges that Cook County Jail has five policy gaps: (1) inadequate intake screening; (2) inadequate health assessments upon admission; (3) inadequate acute, chronic, and emergency medical care; (4) inadequate access to medical care; and (5) inadequate staffing, training, and supervision. But they are lifted directly from headings in the 2008 DOJ Report – lock, stock, and barrel. *See* Third Am. Cplt. ¶ 60; *see also* Dckt. No. 46-1, Exhibit K, at 63, 64, 66, 67, 69, 71, 77 of 119.

11

That's all there is. Jones relies only on the headings in the 2008 DOJ Report. He does not cite any of the specific facts in that Report, let alone tie them to his personal experience. The Report is almost 100 pages long and covers deficiencies at Cook County Jail well beyond its medical care system. Even the sections referenced by Jones in the complaint contain pages of findings and analysis on many different topics, most of which would have been irrelevant to diagnosing and treating Jones's broken hand. The Court has no obligation to "dig through [the report] in search of [specific] items that may support" his *Monell* claims. *See Scott-Pitts v. County of Cook*, 2018 WL 3626991, at *3 (N.D. Ill. 2018). Invoking that Report in the aggregate, without more, does not move the ball forward.

The age of the DOJ Report prevents it from giving the Sheriff Defendants proper notice. Jones entered Cook County Jail in July 2017, *nine years* after the events described in the Report. And the jail started implementing policy changes to address the Report in 2009. *Dixon*, 819 F.3d at 348–49. The government reported in May 2017 – two months *before* Plaintiff even arrived at Cook County Jail – that the "Sheriff has achieved sustained compliance with all of the provisions assigned to CCDOC in the Agreed Order" through the "development and implementation of new policies and practices, which have evolved over the course of the Agreed Order." *See United States v. Cook County*, No. 10 C 2946 (N.D. Ill.), Dckt. No 358, at ¶¶ 1–3.

Jones cannot rely on a report that predates his incarceration by nearly a decade to prop up his *Monell* claim, especially when he offers no specifics. *See, e.g.*, *Riley v. Dart*, 2018 WL 4563077, at *5 (N.D. Ill. 2018) ("[I]t is not a given that [the 2008 DOJ Report] represents the state of affairs of the dental care the CCDOC provided in 2014 when Mr. Riley was incarcerated there."); *Gonzalez v. Dart*, 2017 WL 3434128, at *3 (N.D. Ill. 2017) (finding that the 2008 DOJ Report does not support plaintiff's claims when his injuries occurred in 2014 and 2015); *Conwell*

12

*v. Johnsen*, 2016 WL 6661169, at *22 (N.D. Ill. 2016) (finding that the 2008 DOJ Report "does not, standing alone, demonstrate that there currently exists a widespread practice and custom . . . The conditions identified in 2007 do not necessarily demonstrate the conditions of the Jail in 2012 and 2013."); *Harper v. Dart*, 2014 WL 5325370, at *5 (N.D. Ill. 2014) ("Defendant Dart's knowledge that Plaintiff was not receiving adequate care from November 2011, to the present, cannot be inferred from a report issued in 2008 examining conditions in prior years.").

Standing alone, the DOJ Report does not show that the five policy gaps that Jones enumerated continued to exist when he filed suit in 2017. The 2008 DOJ Report is therefore insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. And the DOJ Report is all there is. Jones offers nothing else to support the notion that there are omissions in the policy for medical treatment.

Even then, Jones fails to make a connection between his experience and the five general policy deficiencies discussed in the DOJ Report. *See Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) ("The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm."). Under *Monell*, that's necessary, too. To succeed, Jones must allege that the policy was the "moving force" behind the violation. *See Johnson v. Cook County*, 526 Fed. Appx. 692, 696 (7th Cir. 2013).

But Jones describes the policy inadequacies in broad, vague terms, some with tenuous connections to his experiences at Cook County Jail. He simply states that the deficiencies existed, that the Sheriff Defendants did not "establish or implement policies" to correct them, and that he received inadequate medical care as a result. *See* Third Am. Cplt. ¶¶ 60–61.

Putting aside the 2008 DOJ Report, Jones has not adequately alleged that the jail's deficient medical care was part of a repeated pattern of behavior. "Generally, the existence of a

13

policy is shown through application to several different individuals, although a policy may also be shown through repeated actions directed at one person so long as the repeated actions truly evince the existence of a policy." *Gonzalez*, 2017 WL 3434128, at *3; *see also Calhoun*, 408 F.3d at 380 ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work.").

But Jones doesn't plead that the jail's policies have impacted multiple detainees. He bases his claims on his experience alone, except for the reference to the dated 2008 DOJ Report. "Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Carmona v. City of Chicago*, 2018 WL 306664, at *2 (N.D. Ill. 2018) (collecting cases).

Jones alleges that he had (1) two insufficient medical intake examinations; (2) a delay in visitation with a medical professional; and (3) two unfulfilled referrals to surgery. *See* Third Am. Cplt. at ¶¶ 18–20, 25–27. Jones also notes that he filed 10 Health Service Request Forms to see a doctor. *Id.* at ¶¶ 19, 22, 31, 36, 38–39, 41, 43, 45–46. But he does not allege that the follow-up to those requests resulted in inadequate treatment in a way that demonstrates an unconstitutional policy. To prevail on an inadequate medical care claim, Jones needs to show "systemic and gross deficiencies in staffing, facilities equipment, or procedures in a detention center's medical care system." *Dixon*, 819 F.3d at 348. Instead, he only alleges a handful of unfortunate incidents limited to his personal experience. The face of the complaint does not sweep broadly enough to allege an unconstitutional policy.

Because Jones has not met his burden in pleading an official capacity claim against the Sheriff Defendants, the Court grants the motion to dismiss Count II.

**Conclusion**

For the reasons stated above, the motion to dismiss is granted. This Court grants Plaintiff leave to file an amended complaint by April 30, 2020.

Date: March 24, 2020

Steven C. Seeger
United States District Judge